IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HUDSON SPECIALTY INSURANCE COMPANY | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 4:19-cv-3045 |
| v. | § § § | |
| D&T RENTAL CO.; ND NOLEN DRILLING, LLC; AND GALILEE OIL INVESTMENTS, LLC | § § § § § | |
| *Defendants.* | § | |

## ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Hudson Specialty Insurance Company ("Hudson"), pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., and Rule 57 of the Federal Rules of Civil Procedure, brings this Original Complaint for Declaratory Judgement against Defendants, D&T Rental Co. ("D&T"), ND Nolen Drilling, LLC ("ND Nolen"), and Galilee Oil Investments, LLC ("Galilee Oil"), and would show the Court as follows:

### I. NATURE OF THE ACTION

1. This is an action seeking declaratory relief pursuant to 28 U.S.C. § 2201, et seq. for the purpose of resolving an actual controversy between Plaintiff and Defendants. Hudson seeks a determination of the rights and obligations of the parties under a policy of insurance Hudson issued to D&T, with respect to a lawsuit filed against D&T by ND Nolen and Galilee Oil.

## II. PARTIES

2. Plaintiff, Hudson, is a New York corporation with its principal place of business in New York, New York, and doing business in Texas issuing insurance contracts in Texas as surplus lines coverage pursuant to the Texas Insurance statutes. Thus, it is a citizen of New York.

3. D&T Rental Co. is a corporation organized under Texas law with its principal place of business at 601 E. Commons, Refugio, Texas 78550. Thus, it is a citizen of Texas. Service of process can be made on D&T by serving its registered agent, Ronnie Henning, at the following address: 601 E. Commons, Refugio, Texas 78550.

4. ND Nolen Drilling, LLC is a limited liability company organized under Texas law with its principal place of business at 300 Convent St. #1330, San Antonio, Texas 78205. Its sole member is Brian Nolen, who resides at 150 Estancia Way, Georgetown, Texas 78628, and is a citizen of the state of Texas. Thus, ND Nolen is a citizen of Texas. Service of process can be made on it by serving its registered agent, Law Offices of Guerra, Guerra & Associates, PC, at the following address: 1418 Beech Avenue, Suite 136, McAllen, Texas 78501.

5. Galilee Oil Investments, LLC is a limited liability company organized under Texas law with its principal place of business at 300 Convent St. #1330, San Antonio Texas 78205. Its sole member is Brian Nolen, who resides at 150 Estancia Way, Georgetown, Texas 78628, and is a citizen of the state of Texas. Thus, Galilee Oil is a citizen of Texas. Service of process can be made on it by serving its registered agent, Law Offices of Guerra, Guerra & Associates, PC, at the following address: 1418 Beech Avenue, Suite 136, McAllen, Texas 78501.

### III. JURISDICTION AND VENUE

6. This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because all Defendants are citizens of different states than Plaintiff, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the alleged events or omissions giving rise to the claim and/or controversy occurred, as well as the district in which the Underlying Lawsuit is pending, and under 28 U.S.C. § 1391(b)(1) because D&T is a resident of, and/or has its principal place of business in, this district.

### IV. BACKGROUND & FACTS

8. Hudson issued Policy No. WSC17009883 to D&T for the policy period from September 8, 2017 through September 8, 2018 (the "Policy").[1]

9. ND Nolen and Galilee Oil (collectively, the "Underlying Plaintiffs") filed a lawsuit against D&T (the "Underlying Lawsuit").[2]

10. The Underlying Plaintiffs allege that they engaged D&T to perform a fishing job on an oil well, and that "[w]hat should have been, at the very worst a two week job, Defendant managed to drag it out for nearly 3 MONTHS."[3] They alleged that D&T not

---

[1] A true and correct copy of the Policy is attached hereto and fully incorporated herein as **Exhibit A**.
[2] A true and correct copy of the *Plaintiffs' Verified Original Petition, Request Disclosure (sic) and Ex-Parte Temporary Restraining Order* in Cause No. C-3383-18-G; *ND Nolen Drilling, LLC, et al, v. D&T Rental Co., et al.*, 370th Judicial District Court, Hidalgo County, Texas is attached hereto and fully incorporated herein as **Exhibit B**.
[3] *Id.* at p. 3.

PLAINTIFFS' ORIGINAL COMPLAINT – PAGE 3

only failed to clear the well of the original obstruction, or "fish," but also dropped additional items into the well that "made no sense being there, other than if someone was purposefully delaying finishing the job."[4]

11.     D&T filed its Original Answer and Counter-Petition Seeking Judicial Foreclosure, alleging a lien on the well in the amount of the materials and labor that it provided to the Underlying Plaintiffs.

12.     D&T sought a defense to the Underlying Lawsuit from Hudson. Hudson agreed to defend the claims against D&T, subject to a reservation of its rights to contest coverage and file this action.[5] Hudson is thus providing a defense to D&T at this time while Hudson seeks a declaration from this Court.

## V.     DECLARATORY JUDGMENT

13.     Hudson asks this Court to declare that it owes no duty to defend or indemnify D&T in connection with the Underlying Lawsuit for one or more of the reasons that follow.

### A.     The Underlying Lawsuit does not allege "property damage" caused by an "occurrence or "personal and advertising injury."

14.     The Policy provides, in part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or**

---

[4] *Id.* at p. 5.
[5] A true and correct copy of Hudson's July 11, 2019 reservation of rights letter is attached hereto and fully incorporated herein as **Exhibit C**.

"property damage to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and
...

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

15. The Policy contains the following definitions:

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence that caused it.

...

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

16. The factual allegations in the pleadings against D&T in the Underlying Lawsuit do not constitute an "occurrence" as defined in the Policy. Instead, it is alleged that D&T injured the Underlying Plaintiffs by purposefully delaying the completion of D&T's work on the oil well. The pleadings also contain a count for conversion that is a non

sequitur at best. In any event, conversion is an intentional tort and does not constitute an "occurrence."

17. Furthermore, the factual allegations in the pleadings against D&T in the Underlying Lawsuit do not fall within the Policy definition of "property damage." Instead, the Underlying Plaintiffs allege that D&T overcharged them for the work and that they lost future financing from third parties "[b]ecause of the perceived failure of the operation and extended time it took..."[6] Furthermore, the pleadings seek a temporary restraining order against D&T, which does not constitute damages or "property damage" under the Policy.

18. Moreover, the factual allegations in the pleadings against D&T in the Underlying Lawsuit do not constitute "personal and advertising injury" as defined in the Policy. For all of these reasons, Hudson has no duty to defend or indemnify D&T.

**B.     Exclusions in the Policy preclude any coverage for D&T against the Underlying Lawsuit.**

19. The Policy contains the following exclusions:

**j. Damage To Property**

**"Property damage to:**
...

**(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or**

**(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.**
...

---

[6] **Exhibit B.** at p. 5.

PLAINTIFFS' ORIGINAL COMPLAINT – PAGE 7

Paragraph (6) of this Exclusion does not apply to "property damage" included in the "products-completed operations hazard."

20. The "products completed operations hazard" is defined in the Policy as follows:

> 16. "Products-completed operations hazard":
>
> a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of your product" or your work" except:
>
> (1) Products that are still in your physical possession; or
>
> (2) Work that has not yet been completed or abandoned. However, your work" will be deemed completed at the earliest of the following times:
>
> (a) When all of the work called for in your contract has been completed.
>
> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>
> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
>
> b. Does not include "bodily injury" or "property damage" arising out of:
>
> (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

> (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
>
> (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

21. To the extent that the pleadings in the Underlying Lawsuit allege any "property damage" caused by an "occurrence," which is denied, exclusions j. (5) and/or (6) would nevertheless preclude any duty to defend or indemnify D&T against the Underlying Lawsuit.

22. The Policy also contains the following exclusion:

**This insurance does not apply to:**
...

**(l)   Damage to Your Work**

**"Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard" This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor**

23. The Policy defines "your work" as follows:

**22. "Your work:**

**a. Means:**
   (1) Work or operations performed by you or on your behalf; and
   (2) Materials, parts or equipment furnished in connection with such work or operations.

**b. Includes**
   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

> **(2) The providing of or failure to provide warnings or instructions.**

24. To the extent that the pleadings in the Underlying Lawsuit allege any "property damage" caused by an "occurrence," which is denied, exclusion l. would nevertheless preclude any duty to defend or indemnify D&T against the Underlying Lawsuit.

25. The Policy also contains the following exclusion:

> **m. Damage To Impaired Property Or Property Not Physically Injured**
>
> **"Property damage" to "impaired property" or property that has not been physically injured, arising out of:**
>
> **(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or**
>
> **(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.**
>
> **This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.**

26. "Impaired property" is defined in the Policy as:

> **tangible property, other than "your product" or "your work," that cannot be used or is less useful because:**
>
> > **a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or**
> >
> > **b. You have failed to fulfill the terms of a contract or agreement;**
>
> **if such property can be restored to use by:**
>
> > **a. The repair, replacement, adjustment or removal of "your product" or "your work"; or**

    **b. Your fulfilling the terms of the contract or agreement.**

27. To the extent that the pleadings in the Underlying Lawsuit allege any "property damage" caused by an "occurrence," which is denied, exclusion m. would nevertheless preclude any duty to defend or indemnify D&T against the Underlying Lawsuit.

C. **The General Change Endorsement in the Policy precludes any coverage for D&T against the Underlying Lawsuit.**

28. The Policy contains the following endorsement language:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**GENERAL CHANGE ENDORSEMENT**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**

**ADDITIONAL EXCLUSIONS: EQUIPMENT RENTAL**

**1) ALL COVERAGE UNDER THIS POLICY IS EXCLUDED FOR ANY WORK AND OPERATIONS PERFORMED WITHOUT A WRITTEN AGREEMENT IN PLACE AT THE TIME OF RENTAL OR LEASE, SIGNED BY THE RENTER OR LESSEE OF THE EQUIPMENT AND INCLUDING HOLD-HARMLESS AND/OR OTHER INDEMNITY LANGUAGE IN FAVOR OF THE NAMED INSURED**

**2) ALL COVERAGE UNDER THIS POLICY IS EXCLUDED FOR ANY WORK AND OPERATIONS PERFORMED USING RENTED OR LEASED EQUIPMENT WHERE THE EQUIPMENT HAS NOT FIRST BEEN INSPECTED BY THE NAMED INSURED AND ALL**

**NECESSARY MAINTENANCE OR REPAIRS COMPLETED ACCORDING TO MANUFACTURER'S RECOMMENDATIONS PRIOR TO SUBSEQUENT RENTALS.**

**ALL APPLICABLE FORMS AND ENDORSEMENTS ARE AMENDED ACCORDINGLY. ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

29. The pleadings do not allege, nor was there in fact, any written agreement in place between D&T and the Underlying Plaintiffs for the job at issue in the Underlying Lawsuit. Therefore, the Equipment Rental exclusion in the General Change Endorsement precludes any duty to defend or indemnify D&T against the Underlying Lawsuit.

D. **The Exclusion – Designated Professional Services endorsement in the Policy precludes any coverage for D&T against the Underlying Lawsuit.**

30. The Policy contains the following endorsement:

...

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - DESIGNATED PROFESSIONAL SERVICES**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

**Description of Professional Services:**

    1. -- All Operations --

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph 2., Exclusions of

Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

31. The allegations against D&T are that it was hired to free an oil well of an obstruction. Because performing such a task requires specialized knowledge or training, any duty to defend or indemnify is precluded by the Exclusion - Designated Professional Services endorsement in the Policy.

E. **The Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - With Limited Bodily Injury Exception endorsement in the Policy precludes any coverage for D&T against the Underlying Lawsuit.**

32. The Policy also contains the following language:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION**

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following Exclusions are added to Paragraph 2 Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:

    2. Exclusions
    This insurance does not apply to:

    p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability

> **Damages arising out of:**
>
> **(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or**
>
> **(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.**
>
> **This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.**
>
> **However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of "bodily injury".**
>
> **As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.**
>
> …

33. The pleadings include the following non sequitur: "Defendants have further acquired and further developed the aforementioned secrets, trade secrets, ingredients, formulas, customer lists, via the use of the funds from Plaintiff and in the standard course of business. Such are now property of Plaintiff and are confidential. Defendant has used such confidential information without authorization from Plaintiff and the Plaintiff has

sustained damages and will continue to sustain damages as a result of such." Because this language bears no relationship to the rest of the allegations, and because it is conclusory rather than factual, it cannot give rise to a duty to defend. Furthermore, to the extent that these allegations allege "property damage" caused by an "occurrence" under the Policy, which is denied, the above-quoted endorsement precludes any duty to defend or indemnify under the Policy.

34. For each of the reasons cited above, Hudson owes D&T no duty to defend against the Underlying Lawsuit. For these same reasons, Hudson owes D&T no duty to indemnify against the Underlying Lawsuit.

35. A declaratory judgment action is appropriate in this matter because it will serve a useful purpose in clarifying and settling the legal relations at issue between Plaintiff and Defendants, and will terminate and afford relief from the uncertainty and controversy giving rise to this proceeding.

36. For these reasons, and pursuant to the provisions of 28 USC § 2201, *et seq.*, Hudson respectfully requests that this Court declare the rights, status, and legal relations of the parties in connection with the facts set forth above, the Underlying Lawsuit, the Policy, and established law. Specifically, Hudson asks this Court for a declaration that it has no duty to defend or to indemnify D&T against the Underlying Lawsuit under the Policy. Hudson reserves the right to amend its pleadings to assert additional Policy provisions, arguments, or reasons that no coverage exists under the Policy.

## VI. PRAYER

37. For these reasons, Hudson asks this Court to enter judgment against Defendants and declare that Hudson owes no duty to defend or to indemnify D&T against

the Underlying Lawsuit under the Policy as a matter of law, for its reasonable attorney fees and costs of court as are equitable and just; and for all other relief the Court deems appropriate.

Respectfully submitted,

**BROWN SIMS, P.C.**

David Clay Wilkerson
Texas Bar No. 24010480
Federal ID No. 24138
cwilkerson@brownsims.com
1177 West Loop South,
Tenth Floor
Houston, Texas 77027
713.629.1580
713.629.5027 (facsimile)

**COUNSEL FOR HUDSON SPECIALTY INSURANCE COMPANY**